**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Firestone Financial, LLC,

               **Plaintiff,**

    -vs-

Globe Transport, Inc., et al.,

               **Defendants.**

Case No.  1:24CV2232

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending is Plaintiff Firestone Financial, LLC's Motion for Default Judgment against Defendants Globe Transport, Inc. and Umar Bidzhiev.  (Doc. No. 23.)  Neither Defendant filed a response to Plaintiff's Motion.  For the following reasons, Plaintiff's Motion is GRANTED as set forth herein.

I.      **Background**

On December 23, 2024, Plaintiff Firestone Financial, LLC (hereinafter "Plaintiff" or "Firestone") filed a Complaint against Defendants Globe Transport, Inc. and Umar Bidzhiev (hereinafter referred to collectively as "Defendants") alleging various state law claims.[1]  (Doc. No. 1.)  Therein, Plaintiff alleges the following facts.

On or about August 3, 2022, Plaintiff, as secured party, and Defendant Globe Transport, Inc. (hereinafter "Globe Transport"), as customer, entered into an Equipment Finance Agreement (the

---

[1] Plaintiff alleges that this Court has diversity jurisdiction over the instant action because (1) Plaintiff is a citizen of Massachusetts and Defendants are both citizens of Ohio; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Doc. No. 1 at ¶¶ 1, 2, 3, 4.)

"Agreement")[2] for the financing of one (1) 2020 Freightliner Cascadia and one (1) 2019 Freightliner Cascadia (hereinafter referred to collectively, "the Equipment").  (Doc. No. 1 at ¶ 6.)  To induce Plaintiff to enter into the Agreement, Defendant Umar Bidzhiev (hereinafter "Bidzhiev") executed a Master Unlimited Guaranty (hereinafter, the "Guaranty")[3] guaranteeing Globe Transport's obligations to Plaintiff under the Agreement.  (Doc. No. 1 at ¶ 7.)

Pursuant to the Agreement, Globe Transport agreed (among other things) to make sixty (60) consecutive monthly payments of $4,488.71.  (Doc. No. 1 at ¶ 8; Doc. No. 1-1 at PageID# 8.) Plaintiff perfected its security interest in the Equipment by recording its lien on the title to the Equipment.  (Doc. No. 1 at ¶ 9.)  *See also* Doc. No. 1-1 at PageID#s 13-14.  Thereafter, Globe Transport failed to make payments under the Agreement when due, and Bidzhiev failed to make payments under the Guaranty.  (Doc. No. 1 at ¶¶ 10, 11.)  Plaintiff alleges that Globe  Transport's failure to make payment constitutes a default pursuant to the Agreement.  (*Id*. at ¶ 12.)  *See also* Doc. No. 1-1 at PageID# 9, ¶ 8.

Plaintiff alleges that, as a result of Globe Transport's default under the Agreement, the balance due to Plaintiff from Globe Transport is $153,315.58.  (Doc. No. 1 at ¶ 13.)  In addition, and also as a result of Globe Transport's default under the Agreement, Plaintiff alleges that it is entitled to prejudgment interest on any unpaid amount due under the Agreement at a contractual rate of twelve percent (12%) per annum continuing to accrue until judgment, as well as attorneys' fees and costs. (*Id*. at ¶ 15.)  *See also* Doc. No. 1-1 at PageID# 9, ¶ 8.  Plaintiff demanded payment from Defendants Globe Transport and Bidzhiev pursuant to the Agreement and Guaranty, but Defendants have failed

---

[2] A copy of the Agreement is attached to the Complaint as Exhibit 1.  (Doc. No. 1-1.)

[3] A copy of the Guaranty is attached to the Complaint as Exhibit 2.   (Doc. No. 1-2.)

or refused to make payment.  (Doc. No. 1 at ¶ 15.)  Plaintiff alleges that it has fully performed its obligations under the Agreement.  (*Id*. at ¶ 16.)

In its Complaint, Plaintiff alleges claims for (1) breach of contract and replevin, as against Globe Transport (Counts I and III); (2) breach of guaranty, as against Bidzhiev (Count II); and (3) detinue as against both Globe Transport and Bidzhiev (Count IV).  (Doc. No. 1.)  In connection with Counts I and II, Plaintiff seeks compensatory damages in the amount $153,315.58, plus prejudgment interest at the rate of 12% per annum, late fees, term fees, attorneys' fees, and costs.  (*Id.* at PageID# 4.)  In connection with Count III for replevin, Plaintiff requests that the Court enter a writ of replevin in favor of Plaintiff against Globe Transport, "directing the U.S. Marshal or duly authorized authority to use all necessary force, including such force necessary to break locks, to repossess" the Equipment and "enter a judgment against Globe Transport Inc. for the value of any of the Equipment not so returned, plus attorneys' fees and costs." (*Id*. at PageID#s 5-6.)  Lastly, in connection with Count IV for detinue, Plaintiff requests that the Court "enter an Order compelling Globe Transport Inc. and Umar Bidzhiev, jointly and severally, to surrender" the Equipment to Plaintiff  "at a place and time directed by Firestone within ten (10) days of this Court's entry of judgment."  (*Id*. at PageID# 7.)

The docket reflects that the Clerk of Court sent copies of the Summons and Complaint to Defendants via certified mail on February 28, 2025 and then again on April 25, 2025.  This certified mail service was returned unexecuted as to both Defendants on June 6 and 9, 2025.  (Doc. Nos. 13, 15.)  Plaintiff then requested that the Clerk serve the Summons and Complaint on both Defendants via regular mail.  (Doc. No. 14.)  On June 11, 2025, the Clerk mailed copies of the Summons and Complaint to Globe Transport and Bidzhiev via regular mail.  (Doc. No. 16.)  The docket reflects that the regular mail service sent to Globe Transport and Bidzhiev was not returned undeliverable.

3

Thus, on August 8, 2025, Plaintiff filed an Application for Entry of Default  pursuant to Fed. R. Civ. P. 55(a) as to Globe Transport and Bidzhiev.  (Doc. No. 21.)  Default was entered as to both Defendants later that same day.  (Doc. No. 22.)

On August 12, 2025, Plaintiff filed the instant Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b) against both Globe Transport and Bidzhiev.  (Doc. No. 23.)  In support, Plaintiff attaches (among other things) the Affidavit of Steven Principi, who is identified as Plaintiff's SVP, Portfolio Risk.  (Doc. No. 23-5.)  In addition to averring the facts alleged in the Complaint (as set forth *supra*), Mr. Principi states that "Firestone repossessed and sold the 2019 Freightliner Cascadia" and that "[d]ue to the condition of the 2019 Freightliner Cascadia and the continued deterioration in used truck prices, the 2019 Freightliner Cascadia was sold for $7,000."  (*Id*. at ¶ 17.)  Mr. Principi further explains that "[a] mechanic's lien was placed on the 2020 Freightliner Cascadia" but Plaintiff "deemed the cost of securing its release to be unreasonable and elected to abandon the vehicle. [4]  (*Id*. at ¶ 18.)

Lastly, Mr. Principi avers that he has reviewed Plaintiff's computer accounting records relating to the Agreement and authenticates an "Agreement Payoff Summary" (which is attached to his Affidavit as an Exhibit).  (*Id*. at ¶ 19.)  Mr. Principi then calculates Plaintiff's damages as follows:

| | |
|---|---|
| **Outstanding Principal Balance:** | $153,315.58 |
| **NF Fee:** | $175.00 |

---

[4] Mr. Principi also alleges that "Firestone originally estimated the fair market value of the Equipment to be $92,257.00 on September 20, 2024." (*Id*. at ¶ 15.)  This conflicts with Plaintiff's allegation in Count III (replevin) that the fair market value of the Equipment is estimated to be between $330,000 to $350,000 (Doc. No. 1 at ¶ 30).  In its Motion for Default Judgment, Plaintiff explains that this allegation in Count III is actually a "misnomer" and that "Firestone originally estimated the fair market value of the Equipment to be $92,257.00 on September 20, 2024."  (Doc. No. 23 at PageID# 139.)  The Court finds that this discrepancy is not a concern for purposes of the instant Motion because (as discussed *infra*) Plaintiff now moves to dismiss its claims for replevin (Count III) and detinue (Count IV) with prejudice. *See* Doc. No. 23 at PageID# 140.

| | |
|---|---|
| **Late charges:** | $1,346.64 |

| | |
|---|---|
| **Subtotal:** | **$154,837.22** |
| **Accrued Prejudgment Interest:** | $18,120.40 |
| (Calculated at a prejudgment interest rate of 12% per year from August 3, 2024 to July 25, 2025 (356 days). $154,837.22 x 12% interest= $18,580.36 per annum $18,580.46/365 days= $50.90 per diem $50.90 x 356 days= $18,120.40 and continuing to Accrue at the rate of $50.90 per diem) | |
| **Less Funds Received from the Sale of the Equipment:** | - $7,000.00 |
| (2019 Freightliner Cascadia VIN#1FUJHHDR2KLKJ3935) | |
| **Total under the Agreement:** | **$165,957.62.** |

(*Id.*)  Thus, Mr. Principi avers that "Defendants are indebted to Plaintiff for money damages in the amount of $165,957.62, consisting of the remaining amount due under the Agreement of $154,837.22, plus prejudgment interest in the amount of $18,120.40, less $7,000.00 received from the sale of the Equipment, plus attorneys' fees and costs." (*Id.* at ¶ 20.)

In support of its request for attorneys' fees and costs, Plaintiff submits the Affidavit of Attorney Clay Keller.  (Doc. No. 23-7.)  Therein, Attorney Keller provides the billing rates of three attorneys who worked on this matter (Attorneys Keller, Mark Bernlohr, and Joshua Kaut) and avers that "from January 16, 2025 through the close of business on July 29, 2025, Plaintiff has incurred legal fees and expenses of $10,980.70 related to the litigation herein." (*Id.* at ¶ 7.)

Upon review of Plaintiff's Motion, the Court found that "while Plaintiff provides evidence of its compensatory damages, it does not provide sufficient evidence regarding its request for attorney's fees and costs." *See* Non-Doc Order dated Aug. 13, 2025.  Specifically, the Court explained that

Attorney Keller had failed to "(1) identify how much of the total requested amount of $10,980.70 constitutes attorney fees vs. costs; (2) state how many attorney hours were expended or by whom; or (3) provide any supporting documentation in support of either Plaintiff's request for fees or costs, such as time entries, invoices, receipts, etc." (*Id.*) Accordingly, the Court ordered Plaintiff to provide a Supplement to its request for attorney fees and costs that included the information and supporting documentation noted above. (*Id.*)

On August 26, 2025, Plaintiff filed an Amended Declaration of Counsel in Support of Attorneys' Fees and Costs, which provided the information requested by this Court. (Doc. No. 25.) Specifically, in this Amended Declaration, Attorney Keller avers as follows:

> 7. From approximately January 16, 2025, through the close of business on July 31, 2025, Plaintiff has incurred legal fees and expenses of $11,552.70 related to the litigation herein. All invoices sent to Plaintiff by Counsel are attached hereto as Exhibit 1.
>
> 8. $941.20 of the total are expenses incurred. (See Exhibit 1)
>
> 9. $10,631.50 of the total are for legal fees incurred. (See Exhibit 1)
>
> [10.] The fees set forth above are customary, reasonable, and usual for this and other similar cases. The costs and expenses additionally incurred are reasonable and customary for this and other similar cases.

(Doc. No. 25 at PageID# 188.) Plaintiff also filed a Notice on the docket confirming that it had served copies of its Motion for Default Judgment and all Exhibits thereto on Defendants via regular mail. (Doc. No. 24.)

**II.     Standard of Review**

Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's motion for default judgment under Fed. R. Civ. P. 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Cantel*

*Medical LLC v. Hall*, 2024 WL 3771805 at *2 (N.D. Ohio Aug. 13, 2024).  *See also Old Republic Surety Co. v.  T&A Construction, Inc., et al.*, 2024 WL 4567262 at *2 (N.D. Ohio Oct. 24, 2024) ("[T]he Court accepts as true any well-pleaded factual allegations in the complaint that do not go to the amount of damages.")  Specifically, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Vesligaj v. Peterson*, 331 Fed. Appx 351, 355 (6th Cir. 2009); *Cantel Medical LLC*, 2024 WL 3771805 at *2.  To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Cantel Medical LLC*, 2024 WL 3771805 at *2.  *See also Mill's Pride, L.P. v. W.D. Miller Enters., LLC*, 2010 WL 987167 at *1 (S.D. Ohio Mar. 12, 2010).

Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing" regarding damages.  *Vesligaj,* 331 Fed. Appx at 354-55.  An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it.  *HICA Educ. Loan Corp. v. Jones,* 2012 WL 3579690 at *1 (N.D. Ohio Aug. 16, 2012).  The Court may rely on affidavits submitted on the issue of damages. *See American Contractors Indemnity Company v. Envirocom Construction, Inc.,* 2024 WL 810559 at *3 (N.D. Ohio Feb. 27, 2024); *The P&G Health & Longterm Disability Plan v. Molinary,* 2019 WL 358936 at *2 (S.D. Ohio Jan. 29, 2019).

## III.    Analysis

### A.    Liability

As an initial  matter, the Court notes that, in its Motion for Default Judgment, Plaintiff seeks to dismiss Counts III (replevin) and IV (detinue) of its Complaint with prejudice.  (Doc. No. 23 at PageID# 140.)  Plaintiff's request is granted and Counts III and IV for replevin and detinue, respectively, are hereby dismissed with prejudice.

Upon review of the record, the Court next finds that default judgment is warranted against Globe Transport and Bidzhiev as to Plaintiff's claims for breach of contract and breach of guaranty (Counts I and II).  The record reflects that, after service on Defendants via certified mail was returned unexecuted, Defendants were duly served with the Summons and Complaint on June 11, 2025 via regular mail.  (Doc. Nos. 13, 15, 16.)  As noted above, the docket reflects that the regular mail service directed to Defendants was not returned undeliverable.  Plaintiff moved for entry of default against both Defendants pursuant to Rule 55(a) which the Clerk of Court entered on August 8, 2025.  (Doc. No. 22.)  Defendants Globe Transport and Bidzhiev failed to plead or otherwise defend themselves in this action.  Defendants' failure to respond to the Complaint, entry of default, Motion for Default Judgment, and/or Supplement to Motion for Default Judgment has made it clear that they have no intention of defending this action.  The Court, therefore, accepts the well-pleaded allegations in the Complaint against Defendants Globe Transport and Bidzhiev as true for the purposes of determining liability.  *Zinganything, LLC v. Import Store*, 158 F.Supp.3d 668, 672 (N.D. Ohio 2016).

Nevertheless, the Court must still determine if those facts are sufficient to state claims for breach of contract and breach of guaranty (Counts I and II) as against Defendants Globe Transport and Bidzhiev, respectively.  *See Zinganything, LLC*, 158 F.Supp.3d at 672; *J&J Sports Prods., Inc. v. Rodriguez*, 2008 WL 5083149 at * 1 (N.D. Ohio Nov. 25, 2008).  The Court will address Plaintiff's claims separately, below.

### 1.    Breach of Contract (Count I)

Plaintiff first seeks default judgment in its favor on its breach of contract claim against Globe Transport in Count I.  In that Count, Plaintiff alleges that Globe Transport "defaulted under the Agreement by failing or refusing to make payments when due." (Doc. No. 1 at ¶ 18.)  Plaintiff alleges

8

that "due to Global's [sic] default under the Agreement, Global [sic] is indebted to Firestone in the amount of $153,315.58, plus prejudgment interest at a rate of twelve percent (12%) per annum and attorney's fees and costs." (*Id*. at ¶ 19.)

The Agreement is attached to the Complaint as Exhibit 1. (Doc. No. 1-1.) The Agreement has a "start date" of August 3, 2022 and is between Plaintiff and Globe Transport. (*Id*.) The Agreement provides that "[Globe Transport] ha[s] requested that [Plaintiff] finance the purchase price of the goods and/or services listed and described in this Agreement (the 'Equipment') and [Plaintiff] agree[s] to finance the purchase price of the Equipment under the terms and conditions of this Agreement." (*Id*. at PageID# 8.) The Equipment is identified in Schedule A of the Agreement as one (1) 2019 Freightliner Cascadia and one (1) 2020 Freightliner Cascadia. (*Id*. at PageID# 12.) The Agreement provides a total amount financed of $208,923.00, to be repaid in sixty (60) monthly installments of $4,488.71, with a final payment due date of August 3, 2027. (*Id*. at PageID# 8.)

Among other terms, the Agreement provides that "you [i.e., Globe Transport] will ensure that we [i.e., Plaintiff] receive all Payments when due." (*Id*.) The Agreement also provides the following provision regarding default:

> **8. DEFAULT AND REMEDIES: YOU WILL BE IN DEFAULT IF (A) YOU DO NOT PAY WHEN DUE ANY PAYMENT OR OTHER SUM DUE TO US OR ANY OF OUR AFFILIATES OR ANY MATERIAL AGREEMENT WITH ANY OTHER LENDER, \*\*\* (E) ANY GUARANTOR DEFAULTS UNDER ANY GUARANTY FOR THIS AGREEMENT**, \*\*\*. IF ANY PART OF A PAYMENT IS MORE THAN 10 DAYS LATE, YOU AGREE TO PAY A LATE CHARGE EQUAL TO 5% OF THE PAYMENT WHICH IS LATE OR IF LESS, THE MAXIMUM CHARGE ALLOWED BY LAW. IF YOU ARE EVER IN DEFAULT, WE MAY TERMINATE THIS AGREEMENT AT ANY TIME AND REQUIRE THAT YOU IMMEDIATELY PAY THE UNPAID BALANCE OF THIS AGREEMENT AS A LUMP SUM, INCLUDING ALL FUTURE PAYMENTS TO THE END OF THE TERM DISCOUNTED TO PRESENT VALUE USING A 2% ANNUAL RATE. **IN ADDITION TO OUR OTHER RIGHTS AND REMEDIES, WE MAY RECOVER DEFAULT INTEREST ON ANY UNPAID AMOUNT AT**

9

**THE RATE OF 12% PER YEAR UNTIL PAID**. CONCURRENTLY AND CUMULATIVELY, WE MAY ALSO USE ANY OR ALL OF THE REMEDIES AVAILABLE TO US UNDER ARTICLE 9 OF THE UCC AND ANY OTHER LAW, INCLUDING REQUIRING THAT YOU: (1) DELIVER THE EQUIPMENT TO US TO A LOCATION WE SPECIFY; AND (2) IMMEDIATELY STOP USING ANY EQUIPMENT. \*\*\* **IN THE EVENT OF ANY DISPUTE OR ENFORCEMENT OF RIGHTS UNDER THIS AGREEMENT OR ANY RELATED AGREEMENT, YOU AGREE TO PAY OUR REASONABLE ATTORNEYS' FEES (INCLUDING ANY INCURRED BEFORE OR AT TRIAL, ON APPEAL OR IN ANY OTHER PROCEEDING), ACTUAL COURT COSTS** AND ANY OTHER COLLECTION COSTS, INCLUDING ANY COLLECTION AGENCY FEE. IF WE TAKE POSSESSION OF THE EQUIPMENT, YOU AGREE TO PAY THE COSTS OF REPOSSESSION, MOVING, STORAGE, REPAIR AND SALE. THE NET PROCEEDS OF THE SALE OF ANY EQUIPMENT WILL BE CREDITED AGAINST WHAT YOU OWE US UNDER THIS AGREEMENT AND YOU WILL BE RESPONSIBLE FOR ANY DEFICIENCY AFTER SUCH APPLICATION. \*\*\* **YOU AGREE THAT YOUR RIGHTS AND REMEDIES ARE GOVERNED EXCLUSIVELY BY THIS AGREEMENT. \*\*\***

(*Id*. at PageID# 9) (emphasis added).  The Agreement is signed by the President of Globe Transport (whose signature is illegible) and by Heather Palmer, Plaintiff's VP, Closing and Documents.  (*Id.* at PageID# 11.)

"Under Ohio law,[5] the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the

---

[5] In its Motion, Plaintiff does not recite the elements of a breach of contract claim or otherwise address which State's law applies to the instant action.  A federal court sitting in diversity jurisdiction generally applies the substantive law of the State in which it sits. *Biegas v. Quickway Carriers, Inc*., 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, (1938)).  Here, however, the Agreement provides that it is to be governed by Massachusetts law (Doc. No. 1-1 at PageID# 11), a choice that would likely be imputed to the Guaranty. *See BMO Harris Bank, N.A. v. Stacy*, 2024 WL 4591288 at fn 3 (N.D. Ohio Oct. 28, 2024).  Ordinarily, then, the Court would employ Ohio's substantive choice-of-law rules to determine whether to enforce the Agreement's apparent choice of Massachusetts law.  *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941).  For the following reason, the Court declines to do so here.  Plaintiff has waived application of Massachusetts law by failing to suggest, in either the pleadings or Motion for Default Judgment, that Massachusetts law should govern.  *See, e.g., Atlas Indus. Contractors, LLC v. In2Gro Techs*., 2021 WL 1139887 at \*4–5 (S.D. Ohio Mar. 25, 2021) (parties waived application of choice of law provision in contract by failing to address it or explain the difference between the chosen law and the law of the forum); *BMO Harris Bank, N.A.,* 2024 WL 4591288 at fn 3 (same).  Accordingly, and in the absence of any argument or suggestion to the contrary by Plaintiff, the Court applies Ohio law.

plaintiff as a result of the breach."  *Asset Mgmt. One LLC v. U.S. Bank Nat'l Ass'n,* 569 Fed. Appx

438, 441 (6th Cir. 2014) (quoting *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir.

2012)).

For the following reasons, the Court finds that the well-pleaded allegations in the Complaint,

deemed admitted by Globe Transport's default, establish the elements of Plaintiff's breach of contract

claim.  As for the first element of its breach of contract claim, Plaintiff has alleged the existence of a

contract between itself and Globe Transport and attached an authenticated copy of that Contract (i.e.,

the Agreement) to the Complaint and the Motion for Default Judgment.  (Doc. No. 1 at ¶ 6; Doc. No.

1-1; Doc. No. 23-6 at PageID#s 167, 170-176.)  The Agreement contains the signatures of

representatives of Plaintiff and Globe Transport.  (Doc. No. 1-1 at PageID# 11; Doc. No. 23-6 at

PageID# 173.)  As for the second and fourth elements, Plaintiff alleges that it "fully performed all of

its obligations under the Agreement" and that it suffered losses as a result of Globe Transport's

breach.  (Doc. No. 1 at ¶¶ 13, 14, 16, 19.)  As for the third element, Plaintiff alleges that Globe

Transport breached its obligations under the Agreement "by failing or refusing to make payments

when due."  (*Id*. at ¶¶ 10, 18.)  Taking these factual allegations as true, the Court finds that Plaintiff

has established Globe Transport's liability on its breach of contract claim in Count I.

### 2. Breach of Guaranty (Count II)

Plaintiff also seeks default judgment with respect to its breach of guaranty claim against

Defendant Bidzhiev in Count II.  In that Count, Plaintiff incorporates its previous allegations that

Bidzhiev (1) executed a Guaranty guaranteeing Globe Transport's obligations to Plaintiff under the

Agreement; and (2) failed to make payments under the Guaranty.  (Doc. No. 1 at ¶ 20) (reasserting

¶¶ 7, 11.)  Plaintiff further alleges that "due to Bidzhiev's default under the Master Guaranty,

Firestone has suffered actual damages and is entitled to payment of $153,315.58, plus prejudgment interest at the rate of twelve percent (12%) per annum continuing to accrue until judgment, late fees, term fees and attorneys' fees and costs." (*Id*. at ¶ 21.)

The Guaranty is attached to the Complaint as Exhibit 2. (Doc. No. 1-2.) It is dated August 3, 2022 and is signed by Bidzhiev. (*Id*.) In relevant part, the Guaranty provides as follows:

> MASTER UNLIMITED GUARANTY, dated as of August 3, 2022 (this "Guaranty") in favor of FIRESTONE FINANCIAL, LLC, a Massachusetts limited liability company with its principal office at 117 Kendrick Street, Suite 200 Needham, Massachusetts, 02494-2728 ("Lender"). In consideration of Lender's giving, in its discretion from time to time, credit facilities or accommodations to Globe Transport Inc. (together with its successors, the "Borrower"), each of the undersigned (each a "Guarantor"), agrees as follows:
>
> I. GUARANTY OF PAYMENT AND PERFORMANCE. Each Guarantor, jointly and severally if more than one, hereby guarantees to Lender the full and punctual payment when due (whether at maturity, by acceleration or otherwise), and the performance, of all liabilities, agreements and other obligations of the Borrower to Lender, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, lease, loan or otherwise and whether the Borrower may be liable individually or jointly with others (the "Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectability only and is in no way conditioned upon any requirement that Lender first attempt to collect any of the Obligations from the Borrower or resort to any security or other means of obtaining their payment. Should the Borrower default in the payment or performance of any of the Obligations, the obligations of each Guarantor hereunder shall become immediately due and payable to Lender, without demand or notice of any nature, all of which are expressly waived by each Guarantor. Payments by a Guarantor hereunder may be required by Lender on any number of occasions.
>
> 2. GUARANTOR'S AGREEMENT TO PAY. Each Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to Lender, on demand, all costs and expenses (including court costs and reasonable attorneys' fees and expenses) incurred or expended by Lender in connection with the Obligations, this Guaranty and the enforcement thereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment in full, at the rate per annum equal to the lesser of (a) 18%, or (b) the maximum amount permitted to be paid under applicable law.

12

(*Id*. at PageID# 15.)

Under Ohio law, a guaranty is a contract and, therefore, to succeed on its claims, Plaintiff must establish the elements of a contract claim, i.e., (1) the existence of a contract; (2) performance by Plaintiff; (3) breach by Defendant Bidzhiev; and (4) damage or loss to Plaintiff as a result of the breach.  *See BMO Harris Bank, N.A. v. Stacy*, 2024 WL 4591288 at * 3 (N.D. Ohio Oct. 28, 2024) ("Under Ohio law, a guaranty is a contract and so, to succeed on its claims, BMO must establish the elements of a contract claim.")  *See also Fitz Simon, Inc. v. JHG, Inc*., 2019 WL 1416981 at *3 (Ohio Ct. App. March 28, 2019) ("The breach of ... the guaranty is governed by contract law."); *H.T. Hackney Co. v. NZR Retail of Toledo, Inc*., 2021 WL 964096 at *3 (N.D. Ohio Mar. 15, 2021) (similar)).

For the following reasons, the Court finds that the well-pleaded allegations in the Complaint, deemed admitted by Bidzhiev's default, establish the elements of Plaintiff's breach of guaranty claim. As for the first element, Plaintiff has alleged that Bidzhiev executed the Guaranty and attached an authenticated copy of the Guaranty (which is signed by Bidzhiev) to the Complaint and the Motion for Default Judgment.  (Doc. No. 1 at ¶ 7; Doc. No. 1-2; Doc. No. 23-6 at PageID#s 167, 177-180.) Plaintiff alleges (and the Guaranty provides) that by signing the Guaranty, Bidzhiev agrees to guarantee Globe Transport's obligations to Plaintiff under the Agreement.  (Doc. No. 1 at ¶ 7; Doc. No. 1-2 at PageID# 15; Doc. No. 23-6 at PageID# 177.)  As for the second and fourth elements, Plaintiff alleges that it (1) "fully performed all of its obligations under the Agreement;" (2) demanded payment from Bidzhiev pursuant to the Guaranty; and (3) suffered losses as a result of Bidzhiev's breach.  (Doc. No. 1 at ¶¶ 15, 16, 21.)  As for the third element, Plaintiff alleges that Bidzhiev breached his obligations "by failing to make payments under the Guaranty." (*Id*. at ¶¶ 11, 21.) Taking

13

these factual allegations as true, the Court finds that Plaintiff has established Bidzhiev's liability on its breach of guaranty claim in Count II.

### B.    Damages

With liability established, the Court must determine the amount of the damages.  In light of the documents attached to Plaintiff's Motion and Supplement, discussed below, the Court concludes an evidentiary hearing is not required as to the amount of the judgment.

#### 1.    Actual Damages

Plaintiff asserts that it suffered actual damages in the total amount of $165,957.62, which consists of the remaining amount of principal due under the Agreement of $153,315.58 plus "NF fees" in the amount of $175.00 plus late charges in the amount of $1,346.64 plus prejudgment interest in the amount of $18,120.40, minus $7,000 received from the sale of the Equipment.  (Doc. No. 23 at PageID# 140; Doc. No. 23-5 at PageID#s 168-169.)  Plaintiff supports this amount with Mr. Principi's Affidavit, as well as the Payoff Summary attached thereto as Exhibit 3.  (Doc. No. 23-5 at PageID#s 168-169; Doc. No. 23-6 at PageID# 181.)

In light of the above, and given that both the Agreement and the Guaranty expressly provide for the recovery of prejudgment interest and costs (including late fees/charges) in the event of default, the Court finds that the record demonstrates that Plaintiff is entitled to actual damages in the total amount of $165,957.62 from Defendants Globe Transport and Bidzhiev.

#### 2.    Attorney's Fees and Costs

Plaintiff also seeks an award of attorney's fees and costs.  As discussed above, both the Agreement and the Guaranty provide that Plaintiff can recover reasonable attorney's fees and costs

incurred in the enforcement of its contractual rights.  (Doc. No. 1-1 at PageID# 9; Doc. No. 1-2 at PageID# 15.)

The Sixth Circuit has held that a reasonable attorney fee is one "that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Serv. LP*, 320 Fed. Appx. 442, 446 (6th Cir. 2009) (quoting *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004)).  The Sixth Circuit outlined the process for determining a reasonable fee in *Dowling:*

> Determining a reasonable fee begins with calculating the product of "a reasonable hourly rate" and "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This product has come to be known as the "lodestar." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 642 (6th Cir. 2009). We must indulge a "strong presumption" that the lodestar "represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

*Id*.  The Sixth Circuit also noted that district courts have "broad discretion" when determining what constitutes a reasonable hourly rate for an attorney.  *Id*. at 447.  In determining a reasonable rate, a court may consider awards in analogous cases, *see Johnson v. Conn. Gen. Life. Ins. Co.,* 2008 WL 697639 at *5 (N.D. Ohio Mar. 13, 2008), as well as the court's own knowledge and experience in awarding attorney fees.  *Ousley v. Gen. Motors Ret. Program for Salaried Emps*., 496 F.Supp.2d 845, 850 (S.D. Ohio 2006).

With respect to determining whether the number of hours billed was reasonable, the "'standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.'"  *Gilden v. Platinum Holdings Group, LLC*, 2019 WL 590745 at *4 (S.D. Ohio Feb. 13, 2019) (quoting *Wooldridge v. Marlene Industries Corp*., 898 F.2d 1169, 1177 (6th Cir. 1990) (*abrogated on other grounds by*

15

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001))).

Here, Plaintiff requests a total of $11,552.70 in attorney fees and costs. (Doc. No. 25 at ¶ 7.) To support the reasonableness of this request, Plaintiff provides the Affidavit of Attorney Keller, as well as a series of billing statements sent to Plaintiff by Counsel regarding this litigation between January 2025 and August 2025. (Doc. Nos. 25, 25-1.) These documents reflect that three attorneys worked on this matter for Plaintiff – Attorney Keller, Attorney Mark Bernlohr, and Attorney Joshua Kaut.

According to Attorney Keller's Amended Declaration and the billing statements attached thereto, Attorney Keller billed 13.60 hours in this matter at an hourly rate of $295.00, for a total of $4,012.00 in attorney's fees. (Doc. Nos. 25, 25-1.) Attorney Bernlohr billed 2.1 hours at an hourly rate of $295.00, for a total of $619.50 in attorney's fees. (*Id*.) And Attorney Kaut billed 26.3 hours at an hourly rate of $230.00, for a total of $6,049.00 in attorney's fees. (*Id*.) By this Court's calculation, this amounts to a total amount of $10,680.50 in attorney's fees. Attorney Keller declares that the hourly rates charged by himself, Attorney Bernlohr, and Attorney Kaut are "based on experience and qualifications and the rates charged by others in the community with similar experience." (Doc. No. 25 at ¶ 6). Attorney Keller further avers that "the fees set forth above are customary, reasonable, and usual for this and other similar cases." (*Id*. at ¶ 8.) The billing statements also reflect costs in the total amount of $941.20 for Court filing fees, postage, copying, travel, Pacer fees, and computerized legal research. (Doc. No. 25-1.)

Upon careful consideration and review of Attorney Keller's Affidavit and the billing statements attached thereto, the Court finds that an award of attorney's fees in the amount of

$10,680.50 is reasonable. First, the Court concludes that the respective hourly rates charged by Attorneys Keller, Bernlohr, and Kaut are reasonable given their years of experience[6] and the nature of the instant action. The Court further finds that the number of hours charged by Attorneys Keller, Bernlohr, and Kaut is also reasonable. Lastly, the Court concludes that the $941.20 in costs incurred by Plaintiff in the instant action are likewise reasonable.

Accordingly, and for all the reasons set forth above, the Court awards Plaintiff the total amount of $10,680.50 in attorney fees and $941.20 in costs.

## III.    Conclusion

For all the reasons set forth above, Plaintiff's Motion for Default Judgment (Doc. No. 23) is GRANTED, as follows. Plaintiff's claims for replevin (Count III) and detinue (Count IV) are hereby dismissed with prejudice. Plaintiff is entitled to default judgment in its favor on liability with respect to (1) Count I (breach of contract), as to Defendant Globe Transport; and (2) Count II (breach of guaranty), as to Defendant Bidzhiev. Regarding damages, the Court finds that Plaintiff is entitled to a total of (1) $165,957.62 in damages (inclusive of prejudgment interest); (2) attorney's fees in the amount of $10,680.50; and (3) costs in the amount of $941.20.

**IT IS SO ORDERED.**

Dated:  December 4, 2025                         *s/Pamela A. Barker*
                                                 PAMELA A. BARKER
                                                 UNITED STATES DISTRICT JUDGE

---

[6] Attorney Keller avers that he was admitted in 2000; Attorney Berhlohr was admitted in 1987; and Attorney Kaut (who had the lowest billing rate herein) was admitted in 2024. (Doc. No. 25.)